**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mark David Sullivan,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-18-08309-DJH<br><br>**ORDER** |

At issue is Defendant's denial of Plaintiff's concurrent applications for Title II Disability Insurance Benefits and Title XVI Supplement Security Income under the Social Security Act ("Act"). Plaintiff filed a Complaint (Doc. 1) seeking judicial review of the denial, and the Court now considers Plaintiff's Opening Brief (Doc. 19, "Pl. Br."), Defendant's Response Brief (Doc. 22, "Def. Br."), Plaintiff's Reply Brief (Doc. 25), and the Administrative Record (Doc. 16, "R."). Because the Court finds the decision free of legal error and supported by substantial evidence, it affirms.

**I.  BACKGROUND**

Plaintiff filed his applications on September 11, 2014, alleging disability as of August 1, 2011. (R. at 16.) Defendant denied the applications initially on March 11, 2015 and upon reconsideration on August 21, 2015. (*Id.*) Plaintiff requested a hearing before an administrative law judge ("ALJ") which was held on May 26, 2017. (*Id.*) On October 2, 2017, the ALJ issued her decision finding Plaintiff not disabled prior to October 30, 2016[1]

---

[1] Plaintiff was insured under Title II of the Act through September 30, 2012. (R. at 18.)

(R. at 15–25), which was upheld by the Appeals Council on August 29, 2018 (R. at 1–3).

In his application, Plaintiff stated that the following conditions limited his ability to work: depression, ADHD, "joint [rheumatoid arthritis] problems," spinal stenosis, COPD, valley fever, "possible lung cancer," artery disease, "right shoulder problems," perifocal artery disease, hypertension, and neuropathy. (R. at 241.) At the hearing, Plaintiff testified to having pain in his neck, back, knees, arms, and shoulders; no strength in his arms; nerve damage and weakness in his left arm; lung issues associated with COPD and valley fever; neuropathy in his feet; toe amputations due to bone infections; and depression. (R. at 42–49, 52–54.) Following the hearing, the ALJ found Plaintiff had "severe" impairments of "degenerative disc disease with cervical spine stenosis, degenerative joints disease of the shoulders, arthritis, diabetes, amputations of multiple toes, COPD, [and] status post partial left lung removal," and "nonsevere" impairments of "hypertension, dyslipidemia, and valley fever." (R. at 18–19.) The ALJ found that prior to October 30, 2016, Plaintiff retained the following residual functional capacity[2] ("RFC"):

> [T]he claimant has the residual functional capacity to perform less than the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). He can lift and carry 10 pounds frequently and 20 pounds occasionally, stand and walk for 2 hours per 8-hours a day, never climb ladders, ropes or scaffolds, occasionally climb ramps and stairs, occasionally kneel, crouch and crawl, and occasionally perform overhead lifting bilaterally. He can frequently balance and stoop. He can never tolerate concentrated exposure to wetness/humidity, concentrated exposure to pulmonary irritants, or any exposure to dangerous moving machinery or unprotected heights.

(R. at 20.) Plaintiff brings this appeal alleging that: (1) the ALJ erred in failing to consider his umbilical hernia "severe" and (2) the RFC is not supported by "substantial evidence"

---

Because the ALJ did not find Plaintiff "disabled" prior to this date, he is not eligible for Title II benefits, which are based on insured status. He is only entitled to Title XVI benefits, which are based on financial need, as of October 30, 2016. (*See* Def. Br. at 2.)

[2] A claimant's "residual functional capacity" is "the most [he] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

because the ALJ failed to consider other evidence. (Pl. Br. at 1–2.)

## II. LEGAL STANDARD

This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), which provide that a reviewing court may affirm, modify, or reverse the decision of the Commissioner, with or without remanding the cause for a rehearing. The district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the decision only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence" is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.*; *see also Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997) ("[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled."). Even if the decision contains error, the Court will not reverse the decision where the error is "harmless" as "inconsequential to the ultimate nondisability determination" or where the ALJ's "path may reasonably be discerned, even if the [ALJ] explains [her] decision with less than ideal clarity." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citing *Alaska Dept. of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004)). The Court "must consider the record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn*, 495 F.3d at 630. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

To determine whether a claimant is "disabled" under the Act, the ALJ engages in a five-step sequential analysis. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). For the first four steps, the burden of proof is on the claimant; at the fifth step, it shifts to the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If a claimant fails at any step, the analysis ends, and he is not disabled. First, he must show he is not presently engaged in

substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Second, he must show a "severe" medically determinable impairment or combination of impairments.[3] *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Third, he must show that the impairment meets or medically equals an impairment in Appendix 1 of Subpart P of 20 C.F.R Part 404. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). However, if the claimant fails step three, he may still be found disabled at step four by showing he is unable to perform any past relevant work and by meeting steps one and two. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The ALJ determines if the claimant met step four by assessing the claimant's RFC. *Id.* At the fifth and final step, the burden shifts to the ALJ to show that the claimant is able to perform other work that exists in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III. ANALYSIS

### A. The ALJ did not err in failing to find his umbilical hernia "severe."

Plaintiff alleges the ALJ erred by failing to find his umbilical hernia "severe" at step two of the disability analysis. (Pl. Br. at 9.) As such, he maintains the ALJ's finding of non-disability prior to September 30, 2012 (his date last insured) is not supported by substantial evidence. (*Id.* at 10.)

Step two is "a de minimis screening device" for weeding out groundless claims. *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005); *see Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). At step two, a claimant must establish the existence of a medically determinable impairment by objective medical evidence; a mere diagnosis, medical opinion, or statement of symptoms will not suffice. 20 C.F.R. §§ 404.1521, 416.921. Once established, the ALJ then considers whether the impairment, individually or in combination with other impairments, is "severe" and expected to last more than twelve months. 20

---

[3] "In determining whether [a claimant's] physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, [the agency] will consider the combined effect of all [] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §§ 404.1523(c), 416.923(c).

C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is "severe" if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" are "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1522(b), 416.922(b). Examples include physical functions such as walking, standing, lifting, and reaching. *Id.*

Here, Plaintiff alleges that his umbilical hernia should have been considered a "severe" impairment because a "no work order" from his treating physician, Dr. Gardner, stated he was "unable to work" as of August 2011 until he had surgery to repair the hernia. (Pl. Br. at 10, R. at 507.) Plaintiff alleges he had the corrective surgery on February 28, 2013, which shows the hernia lasted for more than twelve months, citing a physician order dated February 21, 2013.[4] (Pl. Br. at 10, citing R. at 539.) The physician order also stated that Plaintiff did not have insurance, which is presumably why the surgery did not occur sooner. (R. at 507.) Therefore, according to Plaintiff, his umbilical hernia was "severe."

The Court disagrees. In order for an ALJ to find that an impairment is "severe," there must be substantial evidence in the record that allows for the ALJ to make that finding. More specifically, there must be substantial evidence showing how the impairment "significantly limits" the claimant's ability to perform the "basic work activities" in 20 C.F.R. §§ 404.1522(b) and 416.922(b), e.g., stand, walk, sit, lift, carry, push, reach, handle, see, hear, etc. Moreover, SSR 96-8p states:

> When there is no allegation of a physical or mental limitation or restriction of a *specific* functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity.

1996 WL 374184, *1 (July 2, 1996) (emphasis added). In the record before the Court, there is no such allegation, nor any substantial evidence of a limitation or restriction of a *specific*

---

[4] This physician order is the only record of the surgery. There are no other records establishing that the surgery actually took place on February 28, 2013.

- 5 -

functional capacity due to the umbilical hernia. The only evidence Plaintiff cites in support of his argument is a "no work order" from his physician. (R. at 507.) However, this does not suffice. The "no work order" merely states a bare conclusion that Plaintiff "is unable to work" until his hernia is repaired without stating *how* the hernia impacts Plaintiff's ability to do basic work activities with any level of specificity. Given this lack of explanation and any clinical support in the record, it does not constitute substantial evidence that Plaintiff's umbilical hernia was "severe."

Furthermore, nowhere in Plaintiff's application where he was asked to list each condition affecting his ability to work did he list the hernia. (R. at 241.) Nor did Plaintiff allege any limitations due to the hernia at the hearing, despite multiple prompts from the ALJ to discuss any symptoms and limitations preventing him from working. (R. at 44, 45, 47, 48–49.) The only time the hernia was even mentioned at the hearing was when the ALJ inquired into his work history at which point Plaintiff testified to working for a roofing company until he "got sick" and "had the hernia, whatnot," but with no further explanation. (R. at 50.) Before concluding the hearing, the ALJ, yet again, asked Plaintiff, "[I]s there anything else that you feel that I should know, that you haven't already told me, about your limitations and symptoms that would help me analyze your case?" (R. at 61.) Plaintiff responded, "[N]othing that I can really think of," and then reiterated how his body would not let him be a roofer anymore, again, without any mention of the hernia. (*Id.*)

Thus, the ALJ did not err in failing to consider the umbilical hernia as a "severe" impairment. There is neither any evidence nor allegations of any specific functional defects due to the hernia in the record. Even if there was substantial evidence to show that the umbilical hernia was "severe," the ALJ's failure to consider it "severe" is harmless given that the ALJ had found other "severe" impairments and proceeded through the entire five-step analysis. *See Burch*, F.3d at 682 (finding no reversible error where the ALJ failed to consider an impairment "severe" at step two where step two was resolved in the claimant's favor); *see also Treichler*, 775 F.3d at 1099 (stating that an error that is "inconsequential to the ultimate nondisability determination" is harmless).

**B. The RFC is reasonable and supported by substantial evidence.**

On his application, Plaintiff stated that "problems" in his right shoulder limited his ability to work. (R. at 241.) At the hearing, Plaintiff testified that he only has "60 percent usage" of his right arm due to pins in it from old roofing injuries and a torn rotator cuff. (R. at 43, 47, 54.) He elaborated, stating that he cannot do "[a] lot of overhead" and has "[n]o strength in [his] arms for lifting." (R. at 44, 54.) He stated that he has "like zero strength" in both shoulders and arms to lift "[e]ven light stuff," explaining that "[h]olding a shower curtain, if you will, is hard." (R. at 54.) Additionally, he testified to problems with his left arm, stating that it has nerve damage and "extreme weakness in it, due to [his] neck." (R. at 46.) The ALJ therefore limited the amount of weight Plaintiff could lift and carry and limited Plaintiff to just "occasional" overhead lifting. (R. at 20.) Plaintiff, however, alleges that the RFC is not supported by substantial evidence and should have contained stricter limitations in reaching as well as additional limitations in fingering and handling. (Pl. Br. at 10–11.)

First, Plaintiff alleges that the ALJ should have included a stricter limitation with respect to reaching, purporting that medical evidence shows that Plaintiff's "shoulder range of motion was restricted in all directions," not just overhead. (Pl. Br. at 11, citing R. at 1132, 1136.) However, the cited treatment records do not support this broad contention. Page 1132 of the record is from a March 30, 2015 appointment with Dr. Andrea Gonzales. At this appointment, Dr. Gonzales's examination of Plaintiff's musculoskeletal system revealed "limited ROM [range of motion] and bony deformity," "shoulders and knees with dec[reased] ROM," and "about 80% ROM in all directions" in the left shoulder.[5] (R. at 1131.) Page 1136 is from a February 6, 2015 appointment with Dr. Gonzales. At this appointment she again noted "limited ROM and bony deformity" and "shoulders and knees with dec[reased] ROM." (R. at 1136.) Thus, while the medical evidence clearly supports *some* degree of limitation with respect to Plaintiff's range of motion in his arms, it does not

---

[5] Physical therapy was also offered to Plaintiff at this appointment, but apparently he refused it. (R. at 1132.)

support the notion that his range of motion was restricted in *all* directions. Furthermore, Plaintiff only testified that lifting objects and reaching overhead were what he was unable to do because of his shoulder and arm problems. He never testified that he was unable to reach in *all* directions. Thus, the ALJ's limitation of occasional overhead lifting is reasonable and supported by substantial evidence. The Court finds no error.

Second, Plaintiff alleges that the ALJ's finding of "nerve damage and irritation in the left upper extremity and the presence of bilateral carpal tunnel syndrome" warranted limitations in fingering and handling as well. (Pl. Br. at 11, citing R. at 21, citing R. at 1091.) Plaintiff also cites treatment records where he was noted as having diminished grip strength, tremors, and numbness and tingling in his arms and fingers. (Pl. Br. at 11–12, citing R. at 1116, 1131.) Plaintiff further alleges that his carpel tunnel syndrome should have been determined to be a "severe" impairment at step two. (Pl. Br. at 11.)

The Court disagrees. The analysis here is identical to the prior analysis of Plaintiff's umbilical hernia. As with the umbilical hernia, Plaintiff fails to allege a physical limitation or restriction of a *specific* functional capacity resulting from the carpel tunnel syndrome or any of the above symptoms, and there is no information in the case record that there is such a limitation or restriction. *See* SSR 96-8p, *1. Merely handing over the medical records to the agency without any additional information as to how the documented conditions in those records affect the ability to carry out basic work activities is not sufficient. It is not within the province of the ALJ to comb the medical records and determine *sua sponte* what the severe impairments are. *Cf. Trevizo v. Berryhill*, 871 F.3d 664, 683 (9th Cir. 2017) (finding ALJ improperly substituted her own judgment for that of a physician). The burden, rather, is on the claimant. Here, Plaintiff neither listed carpel tunnel syndrome as a condition that limits his ability to work on his application nor did he mention it–even once– at the hearing, despite multiple prompts from the ALJ to discuss any work-limiting conditions or symptoms. Thus, the ALJ did not err in failing to address Plaintiff's carpel tunnel syndrome where Plaintiff did not provide any basis for the ALJ to find that it had any impact on his ability to do basic work activities.

**IT IS THEREFORE ORDERED** affirming the decision of the Commissioner of Social Security.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and terminate this case.

Dated this 7th day of January, 2020.

Honorable Diane J. Humetewa
United States District Judge